# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 9/23/2025 4:46 PM
By: Christopher Hirt, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
MCLAREN AUTOMOTIVE INC., a Delaware corporation,
BMF MEDIA GROUP, a Delaware limited liability company; and
DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Monterey Courthouse
1200 Aguajito Road, Monterey, CA 93940

CASE NUMBER: *(Número del Caso):* 25CV004887

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ronald J. Fisher, One Embarcadero Center, 22nd Floor, San Francisco, CA 94111 , 415-392-1960

DATE: September 23, 2025 *(Fecha)* 9/23/2025 Clerk, by *(Secretario)* /s/ Christopher Hirt , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

SUPERIOR COURT OF CALIFORNIA
EUREKA
COUNTY OF MONTEREY

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* MCLAREN AUTOMOTIVE INC. and BMF MEDIA GROUP,

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ronald J. Fisher, 298660,
One Embarcadero Center, 22nd Floor, San Francisco, CA 94111

TELEPHONE NO.: 415-392-1960 FAX NO.: 415-392-0827
EMAIL ADDRESS: rfisher@sideman.com
ATTORNEY FOR *(Name):* 22 River Hourse LLC, Remy Miralles, and Fidji Simo

*FOR COURT USE ONLY*

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 9/23/2025 4:46 PM
By: Christopher Hirt, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY**
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: Monterey County Courts, 1200 Aguajito Road, Monterey, CA 93940
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Monterey Courthouse

CASE NAME: 22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO v. MCLAREN AUTOMOTIVE INC, BMF MEDIA GROUP, and DOES 1-10

## CIVIL CASE COVER SHEET

[x] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 25CV004887
JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 12
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 09/23/2025
Ronald J. Fisher
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 9/23/2025 4:46 PM
By: Christopher Hirt, Deputy

RONALD J. FISHER (State Bar No. 298660)
E-Mail: *rfisher@sideman.com*
ELLEN V. LEONIDA (State Bar No. 184194)
E-Mail: *eleonida@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for 22 River House, Remy Miralles, and Fidji Simo

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF MONTEREY**

22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO,

Plaintiffs,

v.

MCLAREN AUTOMOTIVE INC., a Delaware corporation; BMF MEDIA GROUP, a Delaware limited liability company; and DOES 1-10,

Defendants.

Case No. 25CV004887

**VERIFIED COMPLAINT FOR (1) FRAUD BY CONCEALMENT, (2) FRAUD BY INTENTIONAL MISREPRESENTATION; (3) FRAUD BY FALSE PROMISE; (4) NEGLIGENT MISREPRESENTATION; (5) TRESPASS, (6) BREACH OF CONTRACT, (7) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; (8) NEGLIGENCE; (9) EQUITABLE INDEMNITY; (10) RESTITUTION; (11) INTENTIONAL INTERFERENCE WITH CONTRACT; (12) INDUCING BREACH OF CONTRACT**

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Plaintiffs Rémy Miralles, Fijdi Simo, and 22 River House LLC ("River House") hereby allege against Defendants McLaren International, Inc. ("McLaren") and BMF Media, LLC ("BMF Media"), as follows:

**FACTUAL BACKGROUND**

1. Plaintiffs Rémy Miralles and Fidji Simo own a home in Carmel Valley through their wholly owned LLC, Plaintiff River House.

2. On July 31, 2025, Defendant McLaren—an internationally renowned supercar brand with an associated world-champion Formula One team—signed a "Location Agreement and Event License" (hereafter, the "Contract") to license the use of the Property so that McLaren's promotional media agent, Defendant BMF Media, could host a weeklong McLaren promotional event (the "Event") during Monterey's world-famous Car Week. A true and correct copy of the Contract is appended hereto as **Exhibit A**.

3. McLaren agreed in the Contract that it was "responsible for obtaining any and all permits necessary to conduct the Event." (Ex. A ¶ 9.)

4. Plaintiffs' consent for Defendants to use the Property was thus expressly conditioned upon McLaren "obtaining any and all permits necessary to conduct the Event." (*Id.*)

5. On information and belief, Defendants separately represented to Plaintiffs' property manager that Defendants had obtained all required permits.

6. McLaren and its agent BMF Media, however, did not obtain any permits from the County of Monterey for the Event.

7. The Event took place from August 11, 2025 to August 18, 2025. On August 13, 2025 (during the middle of the Event) the County of Monterey hand-delivered a citation dated August 12, 2025 to Rachel Newman and Dan Rosenthal of Defendant BMF Media.

8. The August 12, 2025 citation (which was addressed to Plaintiff Miralles and Simo) found that required permit had not been obtained for the Event, and assessed an administrative fine of $505,359.00 against Plaintiffs.

9. A true and correct copy of the August 12, 2025 citation is attached hereto as **Exhibit B**.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

10. Neither BMF Media nor McLaren notified Plaintiffs that they had received the August 12, 2025 citation from the County of Monterey.

11. Defendants told Plaintiffs' property manager that the County had stopped by and spoken with BMF, that BMF had resolved the issue, and the Event was proceeding as planned. BMF did not disclose that there was a permit issue, nor that an administrative citation had been issued.

12. The fact that a citation fining Plaintiffs $505,359.00 had been issued by the County of Monterey because Defendants had breached their promise to "obtain[] any and all permits to conduct the Event" was a material fact that Defendants had a duty to disclose to Plaintiffs.

13. Had Defendants timely disclosed that material fact, Plaintiffs reasonably would have immediately put a stop to the remaining six days of the Event (August 13, 2025 through August 18, 2025).

14. On information and belief, BMF Media and McLaren intentionally concealed the fact that they had received the August 12, 2025 citation from the County of Monterey.

15. On information and belief, the reason that Defendants intentionally concealed the fact that they had received the August 12, 2025 citation from the County of Monterey was that Defendants knew that Plaintiffs would have immediately put a stop to the remaining six days of the Event.

16. On September 12, 2025, the County of Monterey issued a revised administrative citation that increased the administrative fine to $761,975, plus $900 in alleged administrative costs (hereafter, the "The September 12, 2025 Revised Citation"). A true and correct copy of the September 12, 2025 Revised Citation is attached hereto as **Exhibit C**.

17. Pursuant to Monterey County ordinance, Plaintiffs cannot contest the fine in the September 12, 2025 Revised Citation unless they first pay it. Plaintiffs therefore were forced to pay the $762,875 fine and costs, and did so on September 18, 2025.

18. Plaintiffs have also suffered damages arising from the annoyance, distress, and mental anguish caused by Defendants' violation of the limits of Plaintiffs' conditional consent to use the Property.

19. McLaren agreed to a comprehensive indemnity clause in the Contract:

> Licensee agrees to indemnify, defend and hold Licensor, all officers, directors, managers, members, shareholders, agents and representatives free and harmless from and against any and all liabilities, liens, fines, penalties, damages, losses, costs, expenses and third party claims for damage or injury, including without limitation, any attorneys' fees or other costs incurred by Licensor, in connection therewith, arising out of, related to, or resulting from, Licensee's breach of this Agreement or Licensee's negligence or willful misconduct when using the Premises.

(Ex. A. ¶ 8.)

20. Before filing this suit, Plaintiffs made demand for indemnity upon Defendants through McLaren's agent Defendant BMF Media pursuant to the Contract's indemnity provision, but Defendants have not indemnified Plaintiffs.

21. Plaintiffs are therefore forced to file suit to redress the substantial ongoing harm they are suffering as a result of Defendants' wrongful acts.

**PARTIES**

22. Plaintiffs Miralles and Simo are individuals and California Residents.

23. Plaintiff 22 River House is a California limited liability company. Plaintiffs Miralles and Simo are the sole owners and only members of Plaintiff 22 River House.

24. On information and belief, Defendant McLaren Automotive, Inc. is a Delaware corporation headquartered in Texas.

25. On information and belief, Defendant BMF Media is a Delaware limited liability company with members who reside in, *inter alia*, New York, Florida, and California.

26. Defendants sued herein under the fictitious names Does 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue such defendants by such fictitious names, pursuant to the provisions of Code of Civil Procedure section 474. Plaintiffs ask leave of the Court to amend the Complaint and allege the true names and capacities of such defendants at such time as the same have been ascertained.

27. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants were the agents, employees, partners, joint venturers, co-conspirators, successors or predecessors

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

in interest, owners, principals, and employers of the remaining Defendants, and in doing the things alleged, were acting within the course and scope of such agency, partnership, employment, ownership, joint venture and/or conspiracy. Plaintiffs are further informed and believe, and based thereon allege, that the acts and conduct herein alleged of each such defendant were known to, authorized by, and/or ratified by the other Defendants, and each of them.

**JURISDICTION**

28. This Court has personal jurisdiction over Defendants because the contract at issue was to be performed in California; because Defendants do business in California, and because Defendants intentionally directed their tortious conduct into California.

29. This Court is the proper venue for this action because the breach of contract and tortious conduct occurred in Monterey County.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Fraud by Concealment (Against All Defendants)**

30. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

31. Defendants disclosed some facts regarding the County of Monterey's visit to the property but not others, making the disclosure deceptive.

32. Defendants intentionally failed to disclose certain facts that were known only to them, and which Plaintiffs could not have discovered.

33. Defendants prevented Plaintiffs from discovering those facts.

34. Defendants intended to deceive Plaintiffs by concealing the facts.

35. Had the omitted information been disclosed, Plaintiffs reasonably would have behaved differently.

36. Plaintiffs were thereby harmed.

37. Defendants' concealment was a substantial factor in causing Plaintiffs harm.

**SECOND CAUSE OF ACTION**

**Fraud by Intentional Misrepresentation (Against All Defendants)**

38. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

39. Defendants represented to Plaintiffs that they had obtained any and all necessary permits before the Event.

40. Defendants' representation was false.

41. Defendants knew that the representation was false when it was made.

42. Defendants intended that Plaintiffs rely on the representation.

43. Plaintiffs reasonably relied on the representation.

44. Plaintiffs were harmed.

45. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs harm.

**THIRD CAUSE OF ACTION**

**Fraud by False Promise (Against All Defendants)**

46. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

47. Defendants made a promise to Plaintiffs that they would obtain any and all necessary permits before the Event.

48. Defendants did not intend to perform this promise when Defendants made it.

49. Defendants intended that Plaintiffs rely on this promise.

50. Plaintiffs reasonably relied on this promise.

51. Defendants did not fulfill this promise.

52. Plaintiffs were harmed.

53. Plaintiffs' reliance on Defendants' promise was a substantial factor in causing Plaintiffs harm.

**FOURTH CAUSE OF ACTION**

**Negligent Misrepresentation (Against All Defendants)**

54. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

55. Defendants represented to Plaintiffs that they had obtained any and all necessary permits before the Event.

56. Defendants' representation was false.

57. Although Defendants may have believed that the representation was true,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Defendants had no reasonable grounds for believing that the representation was true when it was made.

58. Defendants intended that Plaintiffs rely on the representation.

59. Plaintiffs reasonably relied on the representation.

60. Plaintiffs were harmed.

61. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs harm.

**FIFTH CAUSE OF ACTION**

**Trespass (Against All Defendants)**

62. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

63. Plaintiffs owned the Property.

64. Defendants intentionally entered the Property for purposes of putting on the Event.

65. Plaintiffs' permission to enter the Property was expressly conditioned upon Defendants obtaining any and all necessary permits before the Event.

66. Defendants exceeded Plaintiffs' permission to enter the Property.

67. Plaintiffs were harmed.

68. Defendants' entry and conduct were a substantial factor in causing Plaintiffs' harm.

**SIXTH CAUSE OF ACTION**

**Breach of Contract (Against All Defendants)**

69. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

70. Defendants and Plaintiffs entered into the Contract.

71. Plaintiffs, did all, or substantially all, of the significant things that the Contract required them to do.

72. Defendants failed to do something that the Contract required them to do, namely, to "obtain[] any and all necessary permits before the Event."

73. Defendants have also failed to indemnify Plaintiffs for the harm caused by Defendants' failure to "obtain[] any and all necessary permits before the Event," even though Defendants promised in the Contract to indemnify Plaintiffs for any breach of the Contract.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

74. Plaintiffs have been harmed.

75. Defendants' breaches of contract were a substantial factor in causing Plaintiffs' harm.

**SEVENTH CAUSE OF ACTION**

**Breach of Covenant of Good Faith and Fair Dealing (Against All Defendants)**

76. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

77. Defendants and Plaintiffs entered into the Contract.

78. Plaintiffs, did all, or substantially all, of the significant things that the Contract required them to do.

79. Defendants prevented Plaintiffs from receiving the benefits under the Contract by concealing the fact that Defendants had not obtained all necessary permits for the Event.

80. Defendants have also failed to indemnify Plaintiffs for the harm caused by Defendants' failure to "obtain[] any and all necessary permits before the Event," even though Defendants promised in the Contract to indemnify Plaintiffs for any breach of the Contract.

81. By doing so, Defendants did not act fairly or in good faith.

82. Plaintiffs have been harmed by Defendants' conduct.

**EIGHTH CAUSE OF ACTION**

**Negligence (Against All Defendants)**

83. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

84. Defendants were negligent.

85. Plaintiffs were harmed.

86. Defendants' negligence was a substantial factor in causing Plaintiffs' harm.

**NINTH CAUSE OF ACTION**

**Equitable Indemnity (Against All Defendants)**

87. Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

88. Defendants failed to use reasonable care in performing their obligations under the Contract.

89. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**TENTH CAUSE OF ACTION**

**Restitution (Against Defendant BMF Media)**

90.     Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

91.     On information and belief, Defendant McLaren paid Defendant BMF Media for services in connection with the Event, including managing the Event.

92.     Defendant BMF Media was aware of the Contract's obligations but decided not to abide by them, in an effort to cut corners and reduce costs.

93.     Defendant BMF Media was thus unjustly enriched at the expense of Plaintiffs, and Plaintiffs are entitled to restitution.

**ELEVENTH CAUSE OF ACTION**

**Intentional Interference with Contractual Relations (Against Defendant BMF Media)**

94.     Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

95.     There was a Contract between McLaren and Plaintiffs.

96.     Defendant BMF Media knew of the Contract.

97.     Defendant BMF Media's conduct prevented performance or made performance more expensive and difficult.

98.     Defendant BMF Media knew that disruption of performance was certain or substantially certain to occur.

99.     Plaintiffs were harmed.

100.    Defendant BMF Media's conduct was a substantial factor in causing Plaintiffs harm.

**TWELFTH CAUSE OF ACTION**

**Inducing Breach of Contract (Against Defendant BMF Media)**

101.    Plaintiffs incorporate all prior paragraphs as if specifically alleged herein.

102.    There was a Contract between McLaren and Plaintiffs.

103.    Defendant BMF Media knew of the Contract.

104.    Defendant BMF Media intended to cause McLaren to breach the contract.

105.    Defendant BMF Media caused McLaren to breach the contract.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

106. Plaintiffs were harmed.

107. Defendant BMF Media's conduct was a substantial factor in causing Plaintiffs harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendants, and each of them, and relief as follows:

A. Actual damages, including special and consequential damages, in an amount to be proved at trial;

B. Exemplary damages;

C. Specific performance, or other injunctive and/or provisional remedies, as appropriate;

D. Attorneys' fees and costs of suit, as provided by contract and/or applicable law;

E. Restitution;

F. Pre- and post-judgment interest;

G. Pre-judgment attachment pursuant to Code of Civil Procedure Section 484.090;

H. Any other and further relief deemed just and proper by the Court.

DATED: September 23, 2025

Respectfully submitted,

SIDEMAN & BANCROFT LLP

By: ______________________
Ronald J. Fisher
Attorneys for 22 River House, Remy Miralles, and Fidji Simo

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**VERIFICATION**

I, Rémy Miralles, declare:

I am a Plaintiff in the above Verified Complaint.

I have read the foregoing Verified Complaint and know the contents thereof. The same is true of my own knowledge, except as to the matters which are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2025, in Los Angeles, California.

Remy Miralles

Rémy Miralles

# EXHIBIT A



# LOCATION AGREEMENT & EVENT LICENSE

This Location Agreement and Event License ("**License**"), is entered into by and between 22 River House LLC, ("**Licensor**") the owner of the Event Location, and McLaren Automotive Inc. ("**Licensee**"), and shall be effective on the date both parties execute this License and Licensee pays the Fees, as detailed in Paragraph 1 below (the "**Effective Date**").

The Licensee's address is: 1405 South Beltline Road, Suite 100
Coppell, Texas 75019

The Licensor's address is: 22 Scarlett Road
Carmel Valley, CA 93924

The Event Location is: 22 Scarlett Road
Carmel Valley, CA 93924

1. Event Date(s) and Fee Schedule. The table below defines each of the italicized terms which are referenced throughout this License.

| | |
|---|---|
| *License Period* | August 11, 2025 at 9 AM to August 18, 2025 at 12 PM |
| *Event* | Described in Exhibit A |
| *Maximum Overnight Visitors* | 10 |
| *Maximum Day Visitors at Any Given Time* | 300 |
| *Security Deposit* | $50,000 |
| *Location Fee* | $175,000 |

2. Event Location. Licensor owns certain real property commonly known as 22 Scarlett Road, Carmel Valley, CA 93924 and located at the address set forth above (the "Event Location"). Licensee will have exclusive use of the Event Location (in its entirety) during the License Period. The Fees include all applicable taxes, including the County Transient Occupancy Tax, if any, and Licensor is solely responsible for and shall pay all such taxes.

3. Grant of License. In consideration of Licensee's payment of the Fees, Licensor grants to Licensee (and represents and warrants that it has the authority to grant to Licensee) a license to use the Event Location as follows:

    a. License Period: Licensee may occupy the Event Location during the License Period and may conduct the Event described in Paragraph 1.



    b. Maximum Guests: As set forth in Paragraph 1, no more than 300 guests shall be located at the Event Location at any time during the License Period. Licensor represents that the Event Location will safely accommodate up to 300 guests.

c. Use of Event Location: Licensee shall have the unimpeded ability to conduct the Event described in Exhibit A during the License Period. Licensee may not use the Event Location in any manner or for any other purpose other than that described in Exhibit A and subject to the Event Rules attached hereto as Exhibit "B", without obtaining Licensor's prior written consent. Licensee shall exercise common courtesy to all neighbors and shall not block driveways or materially impose on neighbors in any way.

d. Alterations: No major alterations by the Licensor can be done to the Event Location without prior communication and written consent of the Licensee, prior to the License Period.

4. Security Deposit. In addition to all other consideration and service fees provided herein, Licensee shall provide Licensor with a Security Deposit which Licensor may apply against any clean up, damage, penalties for non-adherence to this License, or other liabilities incurred as a result of Licensee's use of the Premises; as agreed by the parties pursuant to the inspection and remediation process described in Section 12 below. Licensor agrees to return or release funds (minus damages, costs, or penalty fees) no later than 15 days after both: (1) Licensee's departure and (2) after all of Licensee's Fees have been fully approved by all intermediary financial institutions and transferred to Licensor. Any amount Licensor deems needed to deduct from security deposit over $5,000 requires at least 2 bids.

5. Payment. Licensee shall pay Licensor the full Location Fee of $175,000 and the Security Deposit of $50,000, totaling $225,000, promptly upon execution of this Agreement. No portion of the Location Fee or Security Deposit shall be deferred, as execution occurs within thirty (30) days of the License Period start date. All payments should be wired to:

Peninsula Luxe, Inc.
Routing info ABA #: 121000248
Account # 9057755952

6. Cancellation. In the event of cancellation of License for any reason by Licensee, Licensee will forfeit 50% of the Location Fee ($). Licensee understands and acknowledges that a cancellation will have caused Licensor to sustain costs and expenses in making the Premises available for use by Licensee pursuant to this Agreement. The parties deem the sum to be a fair and reasonable value for the time, effort, expense, inconvenience, etc. associated with a cancellation by the Licensee.



7. License Non Assignable. This License is personal to Licensee and shall not be assigned. Any attempt to assign the License shall automatically terminate it. No legal title or leasehold interest in the Property is created or vested in Licensee by the grant of this License.

8. Indemnity. Licensee agrees to indemnify, defend and hold Licensor, all officers, directors, managers, members, shareholders, agents and representatives free and harmless from and against any and all liabilities, liens, fines, penalties, damages, losses, costs, expenses and third party claims for damage or injury, including without limitation, any attorneys' fees or other costs incurred by Licensor, in connection therewith, arising out of, related to, or resulting from, Licensee's breach of this Agreement or Licensee's negligence or willful misconduct when using the Premises. Licensee agrees to leave the Premises in as good order and condition as when received by Licensee, reasonable wear and tear excepted, and Licensee shall have the right to remove all of its sets, structure, and other material and equipment from said Premises and Licensee shall be responsible for any loss or damage to the Premises resulting from Licensee's occupancy of the Premises or exercise of rights under this Agreement. Licensee shall not be permitted to make any material modifications to the Premises without the prior written consent of Licensor. The obligation of Licensee under this Section shall survive the performance of the parties of their respective obligations hereunder. Licensee shall sign the Release and Waiver Agreement attached hereto and incorporated herein as Exhibit "C".

   Licensor agrees to indemnify and hold harmless Licensee and its officers, directors, agents and employees from and against all claims, demands, liabilities, damages, expenses, losses, allegations, causes of action and lawsuits (including the payment of reasonable attorney's fees) resulting from the sole gross negligence or willful misconduct of Licensor in connection with this Agreement.

9. Permits. Licensee is responsible for obtaining any and all permits necessary to conduct the Event. Licensor will cooperate with Licensee in good faith to assist Licensee with acquiring those permits. Licensee will follow ALL rules and regulations set forth by them and the City/County Fire Dept. and City/County Police Dept. with respect to Licensee's use of the Event Location. Licensee is responsible for any and all fees associated with obtaining permits.

10. Event Insurance. Licensee further agrees to maintain or in the case of the host liquor liability coverage mentioned below agrees to have its vendor maintain, in full force during Licensee's event use of the Event Location, at Licensee's own expense, a policy of comprehensive liability insurance with host liquor liability coverage (which coverage may be maintained by Licensee's vendor) showing Licensor as an additional insured, including personal injury and property damage coverage, which will insure Licensee and Licensor against liability for injury to persons, damage to property, or death of any person occurring in or about the Event Location or in connection with the event. The insurance



shall be for not less than Two Million Dollars ($2,000,000) for any one person injured or killed, not less than Two Million Dollars ($2,000,000) for any one incident, not less than Five Thousand Dollars ($5,000) for Medical Payments Coverage, and not more than One Thousand Dollars ($1,000) for Property Damage Coverage Deductible. Said insurance shall provide that the Licensor's costs of defending any action against Licensor for personal injury or property damage connected with the event shall be covered. Licensee shall provide Licensor with a policy/policies or a certificate(s) of insurance showing that this insurance is in force prior to making any entry onto the Event Location. Licensor may deny Licensee or any visitor or representative of Licensee access to the Event Location until such certificate or policy is delivered to Licensor. The policy/policies will not be canceled prior to Licensee's departure from the Event Location except with written consent of Licensor.

11. Event Monitor. Licensor may enlist, at Licensor's expense, a Location Manager from (the "**Monitor**") to monitor the activity of and Licensee's visitors, employees, and vendors at the Event Location. This Monitor shall ensure that all persons behave in a gentle and courteous fashion, park and remain in the areas licensed for use herein, that all minors are supervised at all times by an adult, that all individuals refrain from destroying or harming any part of the Event Location, and that all restrictions on the use of the Event Location are observed. In the event that the Monitor observes any of the foregoing activities at the Event Location, Monitor will bring that activity to Licensee's attention (through a representative designated by Licensee) in a calm and courteous manner without disrupting the Event and will provide Licensee the opportunity to resolve or otherwise stop that activity before taking any further action. For avoidance of doubt, the Monitor shall be Licensor's only representative at the Event Location during the License Period and the Event Location may only otherwise be occupied by Licensee and Licensee's guests during that time.

12. Damages. Licensee and Licensor agree to jointly inspect the Event Location prior to and following Licensee's use, specifying in writing all existing damage, if any. Licensee may photograph or film the Event Location at the inception of the License Period to document any pre-existing damage to or issues with the Event Location, if any. Licensor agrees to submit in writing, within five days of Licensee's departure from the Event Location, a detailed list of all property damage for which Licensor claims Licensee is responsible. Licensor will permit Licensee's representatives to inspect such damage and contest whether Licensee is actually responsible for such damages. The parties will discuss any necessary repairs, as well as the responsibility for those repairs, in good faith. Licensee shall promptly repair any damage to the Event Location for which Licensee has responsibility hereunder. Licensor acknowledges that certain repairs, including those costing in excess of $5,000, may be covered by insurance and that, in such event, both parties will need to comply with any requirements, timelines, and processes of the applicable insurance company.



1. **<u>LIQUIDATED DAMAGES.</u>IF LICENSOR MUST REVOKE THIS LICENSE DUE TO ANY REASON OTHER THAN AN ACT OF GOD OR OTHER BEYOND THE LICENSOR'S CONTROL, LICENSOR SHALL (1) IMMEDIATELY NOTIFY LICENSEE IN WRITING OF THE REVOCATION, DETAILING THE REASONS THEREFOR; AND (2) PROMPTLY REFUND LICENSEE 100% OF THE FEES (AS DEFINED IN PARAGRAPH 1) RECEIVED BY LICENSOR PRIOR TO SUCH REVOCATION AS LIQUIDATED DAMAGES. THE PARTIES AGREE THAT THIS AMOUNT IS A REASONABLE SUM GIVEN THAT IT IS IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH THE AMOUNT OF DAMAGES THAT WOULD ACTUALLY BE SUFFERED BY LICENSEE IF THE EVENT MUST BE CANCELED. LICENSOR AGREES TO NOT CANCEL FOR ANY REASON OUTSIDE ACT OF GOD LESS THAN 50 DAYS BEFORE THE EVENT DATE WITHOUT COMPENSATION FOR ADDITIONAL FINANCIAL LOSS THIS MAY CAUSE LICENSEE.**

   **LICENSOR'S INITIALS:** DS LB ____ **LICENSEE'S INITIALS:** NB ______

2. <u>Media Rights.</u> All rights of every kind in every media (whether now known or unknown) in and to all photography and sound recordings made by Licensee hereunder shall be solely owned in perpetuity by Licensee, and neither Licensor nor any tenant or other party now or hereafter having an interest in the Event Location shall have any right of action, including without limitation any right to injunctive relief, against Licensee and/or any other party arising out of any use or non-use of said photography or sound recordings. Licensor will not assert or maintain against Licensee any claim of any kind or nature whatsoever, including but not limited to those based upon invasion of privacy or other civil rights, defamation, copyright infringement, libel, or slander, in connection with the exercise of the permission or rights herein granted.

1. <u>Additional Rights.</u> This Agreement includes the right to use the photography, video and sound recordings (or any part thereof) made by Licensee hereunder in connection with the Event and to re-use them in connection with other motion picture, television, or other productions as Licensee may elect, and in connection with the exhibition, advertising, and exploitation thereof in any media, now known or unknown, and/or in any manner whatever at any time in any part of the world in perpetuity.

2. <u>Confidentiality.</u> Each of the parties hereto agrees to hold in confidence and not disclose to persons (other than its employees or agents or affiliates who have a need to know and are bound by confidentiality agreements or other legal obligations), or to use, except as required to perform under this Agreement, any information that is disclosed by the other party, whether in writing, orally or visually, or that is learned by observation during any visit to the facilities of the other party (the "**Confidential Information**"), if such Confidential Information: (a) is designated or marked by the disclosing party as confidential or proprietary at the time of disclosure; or (b) notwithstanding any



designation or marking, reasonably should be expected by a party under the circumstances to be confidential or proprietary information of the other party. Notwithstanding the foregoing, no obligation shall attach to any Confidential Information which a party can prove: (i) was in its rightful possession prior to the time of disclosure by the disclosing party; (ii) is or has become generally available to the public or the industry through no fault of the receiving party; (iii) was received from a third party who has a legal right to make such disclosures; or (iv) was developed, discovered or arrived at by such party, its employees or agents or affiliates independently of and without reference to any of the other party's Confidential Information. A party shall not be in breach of this paragraph if it: (i) uses or discloses the other party's Confidential Information with the written authorization of the other party, so long as such use or disclosure is within the limits of such authorization; or (ii) is required to disclose information pursuant to a requirement of law or court or governmental order; provided, however, that in such an event the recipient shall notify the disclosing party of such required disclosure as promptly as possible and shall disclose information only to the extent necessary to comply with such law or order

3. Non-disparagement. Neither party shall, directly or indirectly, during the term of this Agreement or at any time thereafter, do or refrain from doing anything that may adversely affect, or disparage the reputation, prestige, value, image or impression of the other party, or its officers, directors, affiliates, personnel, products, associated brands, or related companies, by words, actions or other communications, or by any omissions to speak, act or otherwise communicate, or in any other manner whatsoever.

4. Entire Agreement: This Agreement constitutes the entire agreement between Licensor and Licensee relating to the License. Any prior agreements, promises, negotiations, or representations not expressly set forth in the Agreement are of no force and effect. Any amendment to this Agreement shall be of no force and effect unless it is in writing and signed by Licensor and Licensee. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this License on the Effective Date.

**LICENSOR:**

DocuSigned by:
Laura Brockwehl
720876A90D824BF...
22 River House LLC

Date: 7/28/2025

**LICENSEE:**

Nicolas Brown
McLaren Automotive Inc.

Date: 7/31/2025



**Exhibit "A"**
**Description of the Event**

**Overview:**  The Licensee, during the License Period, will host a series of activities at the Event Location exclusively for the promotion of its client,

**Timeline:**


8/11-13:

Load In 9a to 6p

8/14:
Load In 9a to 12:30p
Project Endurance 1:1 Sessions TBC
Dealer Reception 4:30 to 6:30p
Media Dinner 7:30 – 9:30p


8/15:
Project Endurance 1:1 Sessions TBC
Media Meetings TBC
Evening Reception 7 to 10p

8/16:
Hosted Media TBC
Dealer Meetings TBC
Project Endurance 1:1 Sessions TBC
VIP Reception 4:30 to 6:30pm



**Site Plan:** Licensee will submit a more detailed plan and schedule of the Event (and the activities comprising the Event) prior to the Rental Period. Licensor will permit Licensee to implement the Event described in that plan without delay or obstacle, so long as the plan does not describe activities that would violate the rules set forth in Exhibit B or applicable law.



**Appendix "A"**

**Licensor Requirements**

Home Readiness/ Cleanliness: Licensor will provide proof of contracting of cleaners - or allow licensee to contract cleaners at cost of Licensor for the following areas, to be done no sooner than within 1 week of occupation by Licensee:

1. All windows
2. Interior of all buildings, exterior clean up/landscaping trim/blow/weed etc.
3. Clean all water features, allow Licensee access to lighting and setting controls for duration



**Exhibit "B"**

**Property & Event Rules**

The following restrictions shall apply to Licensee's use of the Event Location (including use of the Event Location by any overnight lodging visitors or day visitors) pursuant to this License:

a. No Smoking: Smoking is prohibited within any structure.
b. Pets:. Pets are not permitted inside the property at any time, except for service animals.
c. Minors Must Be Supervised: All visitors under the age of 18 must be supervised at all times.
d. Restrooms: Licensee has permission to use all restrooms on property, and have the option to arrange additional portable restrooms to be placed on the property.
e. Loud Music: All music or noise (amplified or otherwise), loud enough to be heard from outside the boundaries of the Event Location's gated area shall cease by 10pm or to comply with local ordinance.
f. Parking: Parking is restricted to the driveway at the Event Location. The driveway is to be kept free and clear at all times for emergency vehicle access. Licensee must provide Valet service for event.
g. Clean-Up: Licensee shall leave the Event Location in as neat and clean a condition as Licensee finds the Event Location. Licensee shall remove all trash generated from Licensee's use of the Event Location. Licensee agrees to have all outside areas cleaned after the event.
h. Safe Conduct: Licensee assumes full responsibility for the safety and conduct of all persons visiting the Event Location. Licensee shall not permit drugs to be served or consumed at the Event Location. Licensee shall ensure that no person consumes an excessive amount of an alcoholic beverage or uses drugs at the Event Location. Licensee shall ensure that no person drives a motor vehicle to, on, or from the Event Location while under the influence of alcohol or drugs.
i. Caution Signage: During the term of this License, Licensor asks Licensee to post caution signage affirming that all Licensee and visitors to the Event Location accept responsibility for these risks, which signage shall be developed by Licensee at Licensor's expense. Licensee shall not remove or relocate said caution signage without Licensor's prior approval.
j. No spraying of any chemicals allowed at the Event Location.
k. Overnight. The Licensee and its representatives are allowed to stay overnight at the Event Location.
l. The Kitchen & Outdoor Grills can be used for cooking; Refrigerators may be used to keep things cold. All fridges and freezers must be cleared and cleaned by Licensor in preparation for use by Licensee.
m. Pool: Signs shall be posted that clarify there is no lifeguard on duty.
n. Garage. Licensee shall have access to one garage located at the Event Location for storage.
o. Furniture. The Licensee shall be responsible for removing furniture from the Event Location as needed during the License Period. The Licensee shall engage licensed and insured professional movers to remove furniture and reinstall said furniture in its original location and condition prior to the expiration of the License Period. The Licensee shall provide written notification to the Licensor prior to the License Period start date, specifying which furnishings will be removed, stored, and reinstalled on the property.



p. Cleanliness. Licensee agrees to clean the Event Location and neatly arrange all staging accessories (generally found on the Commencement Date) at the end of each day or first thing in the morning. Licensee shall generally keep the premises in a neat and presentable condition at all times.

**I HAVE READ AND ACCEPT THE RENTAL RULES: NB (Licensee Initials)**



**Exhibit "C"**
**<u>Release</u>**

# <u>CAUTION!</u>

- **The Premises include many unfenced areas with hillside below.**

- **The Premises and its adjacent surroundings are home to many types of potentially hazardous plants and animals, including but not limited to: Mountain Lions; Bobcats; Deer, and Poison oak.**

Access to the Premises, is subject to each visitor's voluntary acceptance of any and all risks associated with the Premises including but not limited to those risks stated above.

By entering and remaining on the Premises, each visitor agrees that in consideration for being permitted to use the Premises and any facilities and personal property located thereon, they, their assignees, heirs, distributees, guardians, and legal representatives will not make a claim against, sue or attach the Event Location, including any person or entity with a beneficial interest in the Event Location, and any person or entity with a title interest in the Event Location for injury or damage resulting from their use of the Event Location.

# EXHIBIT B

# COUNTY OF MONTEREY
## HOUSING AND COMMUNITY DEVELOPMENT
## CRAIG W. SPENCER, DIRECTOR

1441 Schilling Place, South 2nd Floor
Salinas, California 93901-4527
(831) 755-5025
Countyofmonterey.gov

August 12, 2025

**Violation Needs To Be Corrected By: IMMEDIATELY**
**Permits to be obtained by September 12, 2025**

Miralles Remy & Simo Fidji TRS
196 Greenfield Ave.
Los Angeles, CA. 90049

Lender/Trustees:
Raymond James Bank, N.A.
710 Carillon Parkway
St. Petersburg, FL. 33716
Loan # 7000003986

First American Trustee Servicing Solutions
1500 Solana Blvd. Bld. 6 Fl 1
Westlake, TX. 76262
Loan # 7000003986

Morgan Stanley Private Bank, National Association
4270 Ivy Pointe Blvd., Suite 400
Cincinnati, OH. 45345
Loan # 6009093220

Chicago Title Company
289 S. San Antonio Rd. Suite #100
Los Altos, CA. 94022
Loan # 6009093220

## ADMINISTRATIVE CITATION

Violation Location: **22 Scarlett Rd. Carmel Valley**
APN: **185-031-020-000**
Zoning: **PG/40-D-S-RAZ|LDR/2.5-D-S-RAZ (see note)**
Case Number: **25CE00431**
Assigned: **Michael Braasch**

This Administrative Citation and Notice of Intent to Record a Notice of Violation has been issued pursuant to the inspection conducted on August 12, 2025, which identified the following violations:

**Description of Violation(s):**

- Hosting of event prior to obtaining required permit(s)/approval(s)
- Construction/placement of tents prior to obtaining required permit(s)/approval(s)
- Operation of short-term rental property prior to obtaining required permit(s)/approval(s)

**Applicable Monterey County and State Code section(s):**

**7.120.040.A; B; C; D – Regulations for Vacation Rentals**
**A.** The operator who intends to operate a vacation rental shall obtain a license that is renewable annually for the fixed location and dwelling in which the vacation rental is to occur.
**B**. The operator of the subject property must obtain all necessary land use entitlements as required by Section 20.64.290 or Section 21.64.290 of the Monterey County Code before the operator commences the vacation rental operations.
**C.** The operator shall register the vacation rental with the County and obtain a Transient Occupancy Tax Certificate in accordance with the provisions of Chapter 5.40 of the Monterey County Code.
**D**. The operator shall obtain a business license from the County pursuant to Chapter 7.02 of the Monterey County Code before commencing the vacation rental use and must keep a valid business license throughout the vacation rental use.

**7.120.160.B; E – Enforcement**
**B.** It shall be unlawful for any person to violate any provision, or to fail to comply with any of the requirements of this Chapter.
**E.** Each and every violation of this Chapter shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by the Monterey County Code or otherwise authorized by law. Each and every day a violation continues it shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by the Monterey County Code or otherwise authorized by law. Additionally, as a public nuisance, any violation of this Chapter may be subject to injunctive relief, disgorgement, and payment to the County of any and all monies unlawfully obtained, costs of abatement, costs of restoration, costs of investigation, attorneys fees, and any other relief or remedy available in law or in equity.

**18.00.020 – Continuation of Public Nuisance**
It is prohibited for any person, firm or corporation to maintain, permit, or allow a public nuisance to exist upon his or her property, or premises, or for any person occupying or leasing the property or premises of another to maintain, permit or allow a public nuisance to exist thereon, after reasonable notice in writing from an enforcement officer, to remove, discontinue or abate the nuisance has been served on the person, firm or corporation.

**18.01.090.A; B – Violations**
**A. Compliance with building standards**. It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment or perform any grading work regulated by this Chapter, or cause same to be done, in conflict with or in violation of any of the provisions of this Chapter.
**B. Compliance with permit requirements**. It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment or perform any grading work regulated by this Chapter, or cause same to be done without first obtaining a permit from the Building Official.

**Required Corrective Action(s):**

1. Immediately cease unpermitted use of property as event site and short-term rental business.
2. Apply for and obtain the required Use Permit from the County of Monterey HCD Planning Department to continue use of property as an event site and short-term rental OR discontinue use of property as an event site and short-term rental property.
3. Apply for and obtain the required Construction permit from the County of Monterey HCD Building Department for the construction of tents with utilities.

Diligently pursue all actions necessary to correct the violation and obtain final inspection approval on all required permits.

Schedule a compliance inspection with assigned Code Compliance Inspector below when all corrective actions are completed.

You are hereby ordered to discontinue the code violation(s) identified in this Administrative Citation. In accordance with Section 1.22.200 of the County Code, it shall be unlawful for any responsible person to willfully fail to diligently pursue the correction of any violation identified in this Administrative Citation.

**Recording of a Notice of Violation**
If the violations in this notice are verified it will result in the recording of a Notice of Violation on the property in accordance with Section 1.22.035 of the County Code.

**If you wish to present evidence that the violations cited does not exist or for some other reason the Notice of Violation should not be recorded, please call the Inspector assigned to your case to schedule a time to meet on the following date:**

**Date: August 26, 2025 - Please call to schedule an appointment**

**Location: Government Center, 1441 Schilling Place, South 2nd Floor, Salinas**

**Meeting with: Michael Braasch**

**Administrative Costs**
Any person, firm, or corporation, who creates or maintains a Code violation shall be liable for the cost of enforcement which shall include, but not be limited to, the cost of investigation and inspection, costs to cure any violation or abate a nuisance, and costs of monitoring compliance.

Adminastrative cost

Administrative Costs to date: **$540.00**
**Fines to date: $505,359.00**

**Notification of Misdemeanor**
Willful failure to take the necessary actions to correct any violation of the County Code is a misdemeanor.

**FURTHER ENFORCEMENT ACTIONS AS REQUIRED**
Chapter 1.22 provides the Enforcement Official the authority to issue a $100.00 fine for the first violation, $500.00 for a second violation of the same ordinance within one year; and a fine not exceeding $1,000.00 for each additional violation of the same ordinance within one year of the first violation. **Each day that the violation remains is a separate violation subject to an additional administrative fine.** Your continued failure to correct the violation(s) by the compliance date of September 12, 2025**,** will result in fines in accordance with Section 1.22.100 of the County Code.

If corrective action is not taken, Administrative Fines will be imposed as follows:

A fine of $100.00 will be imposed on **September 13, 2025**;
A fine of $500.00 will be imposed on **September 14, 2025**;
A fine of $1,000.00 will be imposed on **September 15, 2025**;
A fine of $1,000.00 will be imposed on **September 16, 2025,** and for each subsequent violation for each and every day thereafter.

If you fail to pay the Administrative Fine within 30 days of the date the fine is assessed, you will also be charged a penalty of 10%. In addition to the late payment penalty, the Administrative Fine shall accrue interest at the rate of 1% per month, compounded monthly, exclusive of penalties, from the due date.

**Payments of Administrative Fines shall be made payable to**: County of Monterey, 1441 Schilling Place, 2nd floor, Salinas, CA 93901.

Payment of the fine(s) does not excuse or discharge the code violation that is subject of this Administrative Citation. No permits, licenses, or other entitlements will be issued by any County Department for the property except those necessary to abate the violation or for an emergency situation.

For procedures regarding hearings for Notices of Violations and Financial Hardship Waivers, please review Sections 1.22.040 and 1.22.120 of the County Code. If you have any further questions regarding this Administrative Citation or would like to schedule a meeting to discuss your case, please contact me at **(831) 784-5612 or email: Braaschm@countyofmonterey.gov** as soon as possible.

PREPARED BY:

Michael Braasch
Code Compliance Inspector II


BY ORDER OF THE ENFORCEMENT OFFICIAL

Joshua Bowling
Chief of Building Services


CC:  File, Automation/Documents

# EXHIBIT C

# COUNTY OF MONTEREY
## HOUSING AND COMMUNITY DEVELOPMENT
### CRAIG W. SPENCER, DIRECTOR



1441 Schilling Place, South 2nd Floor
Salinas, California 93901-4527
(831) 755-5025
Countyofmonterey.gov

September 12, 2025

Miralles Remy & Simo Fidji TRS
196 Greenfield Ave.
Los Angeles, CA. 90049

Lender/Trustees:
Raymond James Bank, N.A.
710 Carillon Parkway
St. Petersburg, FL. 33716
Loan # 7000003986

First American Trustee Servicing Solutions
1500 Solana Blvd. Bld. 6 Fl 1
Westlake, TX. 76262
Loan # 7000003986

Morgan Stanley Private Bank, National Association
4270 Ivy Pointe Blvd., Suite 400
Cincinnati, OH. 45345
Loan # 6009093220

Chicago Title Company
289 S. San Antonio Rd. Suite #100
Los Altos, CA. 94022
Loan # 6009093220

## ADMINISTRATIVE CITATION, NOTICE OF VIOLATION, & NOTICE OF INTENT TO RECORD
## (revised)

Violation Location: **22 Scarlett Rd. Carmel Valley**
APN: **185-031-020-000**
Zoning: **PG/40-D-S-RAZ|LDR/2.5-D-S-RAZ (see note)**
Case Number: **25CE00431**
Assigned: **Michael Braasch**

This revised Administrative Citation, Notice of Violation, and Notice of Intent to Record a Notice of Violation, has been issued to replace and supersede the Administrative Citation, document #25CE00431_081225, dated August 12, 2025.  This document is also issued pursuant to the inspection conducted on August 12, 2025.

### INSPECTION AND INVESTIGATION SUMMARY:

On August 12, 2025, I was sent to the property located at 22 Scarlett Rd. Carmel Valley, after our office received

multiple complaints regarding a/an event(s) being held on the property for Monterey Car Week. Upon my arrival, I spoke with Rachel Newman who identified herself as the event manager. I explained to Rachel that I was there to inspect the property based on the complaints submitted regarding the event(s) being held on the property. Rachel then contacted an individual via a phone call and explained the situation. After the phone call, Rachel explained that I could complete my inspection and provided me access to the property.

While onsite, Rachel led me through the property and explained what was going to be taking place within each area of the property. The first area that we inspected was the area in which the caterer was going to be setting up. This area included two tents that were said to be put up on August 11, 2025. One of the tents was said to be 20'x20' and the other tent was said to be 20'x10'. During my inspection of the inside of the tents, it was found that both tents contained appliances being powered by electricity supplied from the house and the larger tent also contained stoves, fryers, and other food warming appliances.

As we continued through the property, Rachel continued to provide me with information regarding the upcoming event that was being held by Mclaren Automotive. She stated that the property was rented from Monday to Monday (8/11/2025-8/18/2025) and that the event was going to be held over three (3) days, Thursday, Friday, and Saturday. Thursday, Friday and Saturday daytime events were said to be very similar events in which all three days were said to have approximately 26 guests and 30-40 staff personnel onsite. The guests were said to be parking at Sanctuary Church and the staff would be parking at 4 Scarlett Rd. The daytime events were to include amplified sound with a vehicle reveal. Friday night was said to have approximately 300 people on the property with a live DJ that was to be scheduled to stop playing amplified music at 10:00pm. Food and bar service was said to be provided to the guests by Tres LA Group, a business in which was said to hold a liquor license for the event. Per Rachel, staff would be onsite Sunday to decommission the items constructed for the event. Prior to my departure from the property, I obtained contact information for Rachel, and I was also given a second contact person (Ashley Dudek – not contacted) in the event that I was unable to make contact with Rachel due to reduced cell phone reception in the area.

After returning to the office, I immediately started my follow up research of the property to obtain information regarding any obtained permits for the event being held on the property. During my research, I was unable to locate any issued permits for the property that would allow for the structures to be constructed and for the event to take place. This information was forwarded to my supervisor who advised me to take appropriate enforcement action and issue an Administrative Citation/Notice of Violation, and provide a copy to the event host(s) at the property.

On August 13, 2025, I returned to the property, and delivered an Administrative Citation (dated 8/12/25) to Rachel Newman and Dan Rosenthal. I also informed them that the County of Monterey was not in support of the event due to the required permit(s)/approvals not being issued at that time. Rachel and Dan both stated that it was understood and that they had staff members working with HCD staff to obtain the required permit(s)/approvals.

After the issuance of the Administrative Citation, on August 14, 2025, an email was sent Josh Bowling, County of Monterey Building Official, which showed the tents had been removed. Accordingly, it was determined that the violation(s) relating to the tents were limited to the three (3) days that the tents were being used. Thereafter, Josh was contacted by Isabel Chattas, and on August 27, 2025, Isabel provided a copy of the rental agreement for the property located at 22 Scarlett Rd. Carmel Valley, CA 93924. The agreement provides that the property was rented for eight (8) days for the amount of $225,000 (a daily rate of $28,125).

This case was opened and investigated based on multiple complaints received from various people. After the complaints were received, an investigation was conducted and an Administrative Citation was issued. Thereafter, the County received additional information and documentation relating to the violation(s) which warranted revisions; accordingly, this Revised Administrative Citation, Notice of Violation, and Notice of Intent to Record is being issued.

This inspection and subsequent follow up ultimately identified the following violations of the Monterey County Code (MCC), State law, or adopted supplementary codes:

## DESCRIPTION OF VIOLATION(S):

1. Hosting an event for three days without obtaining required permit(s)/approval(s)

  - MCC § 21.14.050S
2. Construction/placement of two tents with electrical prior to obtaining required permit(s)/approval(s)
   - MCC § 18.01.050.B.14; 18.01.050.B.4; 18.01.090.B
3. Operation of short-term rental property for eight days without required permit(s)/approval(s).
   - MCC § 7.120.160; 7.120.040

***YOU ARE HEREBY ORDERED TO IMMEDIATELY CEASE AND REMEDY THE AFOREMENTIONED VIOLATIONS.***

## APPLICABLE/RELEVANT MONTEREY COUNTY AND/OR STATE CODE SECTION(S):

**MCC § 7.120.040.A; B; C; D – Regulations for Vacation Rentals**
**A.** The operator who intends to operate a vacation rental shall obtain a license that is renewable annually for the fixed location and dwelling in which the vacation rental is to occur.
**B**. The operator of the subject property must obtain all necessary land use entitlements as required by Section 20.64.290 or Section 21.64.290 of the Monterey County Code before the operator commences the vacation rental operations.
**C.** The operator shall register the vacation rental with the County and obtain a Transient Occupancy Tax Certificate in accordance with the provisions of Chapter 5.40 of the Monterey County Code.
**D**. The operator shall obtain a business license from the County pursuant to Chapter 7.02 of the Monterey County Code before commencing the vacation rental use and must keep a valid business license throughout the vacation rental use.

**MCC § 7.120.160.B; D; E – Enforcement**
**B.** It shall be unlawful for any person to violate any provision, or to fail to comply with any of the requirements of this Chapter.
**D.** The Enforcement Officer, as defined by Monterey County Code Chapter 1.22, is authorized and empowered to enforce the provisions of this Chapter. The Enforcement Officer may issue an administrative citation for the violation of this Chapter as a civil penalty as follows:
1. A civil penalty not exceeding one hundred seventy-five (175) percent of the maximum advertised rental rate per day, or part thereof, or one thousand dollars ($1,000.00) per day, or part thereof, for vacation rentals without an advertised rental rate, for a first violation;
2. A civil penalty not exceeding two hundred seventy-five (275) percent of the maximum advertised rental rate per day, or part thereof, or two thousand five hundred dollars ($2,500.00) per day, or part thereof, for vacation rentals without an advertised rental rate, for a second violation of this Chapter within one year; and
3. A civil penalty not exceeding three hundred seventy-five (375) percent of the maximum advertised rental rate per day, or part thereof, or five thousand dollars ($5,000.00) per day, or part thereof, for vacation rentals without an advertised rental rate, for a third violation of this Chapter within one year.
**E.** Each and every violation of this Chapter shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by the Monterey County Code or otherwise authorized by law. Each and every day a violation continues it shall constitute a separate violation and shall be subject to all remedies and enforcement measures authorized by the Monterey County Code or otherwise authorized by law. Additionally, as a public nuisance, any violation of this Chapter may be subject to injunctive relief, disgorgement, and payment to the County of any and all monies unlawfully obtained, costs of abatement, costs of restoration, costs of investigation, attorneys fees, and any other relief or remedy available in law or in equity.

**MCC § 18.01.090.A; B – Violations**
**A. Compliance with building standards**. It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment or perform any grading work regulated by this Chapter, or cause same to be done, in conflict with or in violation of any of the provisions of this Chapter.
**B. Compliance with permit requirements**. It shall be unlawful for any person, firm or corporation to erect, construct, alter, extend, repair, move, remove, demolish or occupy any building, structure or equipment or perform any grading work regulated by this Chapter, or cause same to be done without first obtaining a permit from the Building Official.

**MCC § 21.14.050. Uses Allowed - Use Permit Required in Each Case**

**S.** Assemblages of people, such as carnivals, festivals, races and circuses, not exceeding ten (10) days, and not involving construction of permanent facilities (ZA);

## REQUIRED CORRECTIVE ACTION(S):

The permit-requiring event and the 8-day vacation rental have concluded, and the tents have been removed. However, the property continues to be operated and offered as a vacation rental, which must immediately cease until and unless all required permit(s)/approval(s) are obtained.

## NOTICE OF INTENT TO RECORD A NOTICE OF VIOLATION:

If the violations in this notice remain uncorrected, it will result in the recording of a Notice of Violation on the property in accordance with MCC § 1.22.035. If you wish to present evidence that the Notice of Violation should not be recorded, you must request a hearing pursuant to MCC § 1.22.040.

## ADMINISTRATIVE FINES/PENALTIES

Pursuant to MCC § 1.22.100, the following administrative fine is hereby imposed:

**$761,975.00**

This fine was calculated as follows:

| Violation # | Description | Amount of Fine | Day of violation | Amount of Fine |
|---|---|---|---|---|
| 1 | Event without permit | $100.00 | 1st | $100.00 |
| 2 | Event without permit | $200.00 | 2nd | $200.00 |
| 3 | Event without permit | $500.00 | 3rd | $500.00 |
| 4 | Erected structures without permits (day 1) | $100.00 | 1st | $100.00 |
| 5 | Erected structures without permits (day 2) | $500.00 | 2nd | $500.00 |
| 6 | Erected structures without permits (day 3) | $1,000.00 | 3rd | $1,000.00 |
| 7 | Short term rental without permits | 175% of daily value ($28,125.00) | 1st | $49,218.75 |
| 8 | Short term rental without permit | 275% of daily value (28,125.00) | 2nd | $77,343.75 |
| 9 | Short term rental without permits | 375% of daily value (28,125.00) | 3rd | $105,468.75 |
| 10 | Short term rental without permits | 375% of daily value (28,125.00) | 4th | $105,468.75 |
| 11 | Short term rental without permits | 375% of daily value (28,125.00) | 5th | $105,468.75 |
| 12 | Short term rental without permits | 375% of daily value (28,125.00) | 6th | $105,468.75 |
| 13 | Short term rental without permits | 375% of daily value (28,125.00) | 7th | $105,468.75 |
| 14 | Short term rental without permits | 375% of daily value (28,125.00) | 8th | $105,468.75 |
| | | | **TOTAL FINE** | $761,975.00 |

If you fail to pay the Administrative Fine within 30 days of the date the fine is assessed, you will also be charged a penalty of 10%. In addition to the late payment penalty, the Administrative Fine shall accrue interest at the rate of 1% per month, compounded monthly, exclusive of penalties, from the due date. Payment of the administrative fine imposed by this Chapter shall be made at the time of filing any appeal to the Hearing Officer pursuant to this Chapter unless the request for appeal also includes a request for a financial hardship waiver.

## ADMINISTRATIVE COSTS

Any person, firm, or corporation who creates or maintains a code violation is liable for the County's administrative costs. Administrative costs include the total direct and indirect costs reasonably and necessarily incurred by the County to investigate, inspect, monitor, or cure any violation.

**Administrative Costs to date: $900.00**

| Staff Rate | Staff Time | Amount |
|---|---|---|
| $180.00 per hour | 5 hours of staff time includes:<br>• travel time to and from the property,<br>• completion of inspection,<br>• completion of property research,<br>• completion of Administrative Citation,<br>• completion of PowerPoint of photos taken during inspection | $900.00 |

**Payments of Administrative Fines and Administrative Costs shall be made payable to**: County of Monterey, 1441 Schilling Place, 2nd floor, Salinas, CA 93901.

Payment of the fine(s) and cost(s) does not excuse or discharge a code violation. No permits, licenses, or other entitlements will be issued by any County Department for the property except those necessary to abate the violation or for an emergency situation.

## RIGHT TO A HEARING

Within thirty (30) days of service of this document, you may request a hearing to:

1. Contest that a violation of the Code exists;
2. Identify the responsible person;
3. Request additional time to correct the violation; or
4. Determine the reasonableness of any administrative costs.

Payment of the administrative fine imposed by this Chapter shall be made at the time of filing any appeal to the Hearing Officer pursuant to this Chapter unless the request for appeal also includes a request for a financial hardship waiver. For procedures regarding Financial Hardship Waivers, please review MCC § 1.22.120.

If you have any further questions regarding this document or would like to schedule a meeting to discuss your case, please contact me at **(831) 784-5612 or email: Braaschm@countyofmonterey.gov** as soon as possible.

**PREPARED BY:**

DocuSigned by:
Michael Braasch
6E5E35D3841E49B...

**Michael Braasch**
**Code Compliance Inspector II**

**BY ORDER OF THE ENFORCEMENT OFFICIAL**

DocuSigned by:
Joshua Bowling
D620862FCA2C415...

**Joshua Bowling**
**Chief of Building Services**

CC: File, Automation/Documents

AT-115

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Ronald J. Fisher (SBN 298660); Ellen Leonida (SBN 184194)
One Embarcadero Center, 22nd Floor
San Francisco, CA 94131
TELEPHONE NO.: (415) 392-1960 FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*: rfisher@sideman.com
ATTORNEY FOR *(Name)*: 22 River House LLC, Remy Miralles, Fidji Simo

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Monterey Courthouse

PLAINTIFF: 22 River House LLC, Remy Miralles, and Fidji Simo

DEFENDANT: McLaren Automotive Inc., and BMF Media Group LLC

**NOTICE OF APPLICATION AND HEARING FOR**
[✓] **RIGHT TO ATTACH ORDER**
[✓] **ORDER FOR ISSUANCE OF**
[✓] **WRIT OF ATTACHMENT**
[ ] **ADDITIONAL WRIT OF ATTACHMENT**

CASE NUMBER: 25CV004887

1. Notice to defendant *(name, address, and telephone number, if known)*:
McLaren Automotive Inc., 1405 South Belt Line Road, Suite 100, Coppell, TX 75019

2. Plaintiff has filed an application for
a. [✓] a right to attach order and writ of attachment. *(Check items 6a, 6b, and 6d(1).)*
b. [✓] a writ of attachment. *(Check item 6d(2).)*
c. [ ] an additional writ of attachment. *(Check item 6d(2).)*

RECEIVED OCT 1 ` 2025 BY:

3. A hearing on plaintiff's application will be held in this court as follows:

Date: November 7, 2025 Time: 8:30 AM Dept.: 15 Div.: Rm.:

4. The request of plaintiff for an order is based upon the application and affidavit or declaration filed and served with this notice and is made under a. [✓] Code of Civil Procedure section 483.010. *(Check item 6h(2)(a).)*
b. [ ] Welfare and Institutions Code section 15657.01. *(Check item 6h(2)(b).)*

RECEIVED OCT 10 2025 BY:

5. Your attention is directed to the following sections of the Code of Civil Procedure and Welfare and Institutions Code that set forth when an attachment may or may not be issued, the manner of calculating the amount to be secured by the attachment, the court's discretion to include costs and attorney's fees, and special limitations on the amount to be secured by attachment in unlawful detainer proceedings: Code Civ. Proc., §§ 482.110, 483.010, 483.015, 483.020; Welf. & Inst. Code, § 15657.01.

6. **You are notified that**
a. [✓] A right to attach order will be issued if the court finds at the hearing that plaintiff's claim is probably valid and the other requirements for issuing the order are established. This hearing may include both written and oral presentations but is not for the purpose of determining whether the claim is actually valid. Determination of the actual validity of the claim will be made in subsequent proceedings in the action and will not be affected by the decision at the hearing on the application for the order.
b. [✓] If you desire to oppose the issuance of a right to attach order or object to the amount to be secured by the attachment as provided in Code of Civil Procedure section 483.015 (or Code of Civil Procedure section 483.020 in unlawful detainer actions), you must file with this court and serve on plaintiff (no later than five court days prior to the date set for hearing in item 3) a notice of opposition and supporting declaration or affidavit as required by Code of Civil Procedure section 484.060.
c. If a right to attach order is or has been issued, a writ of attachment will be issued to attach your property described in plaintiff's application unless the court determines that the property is exempt from attachment or that its value clearly exceeds the amount necessary to satisfy the amount to be secured by the attachment. However, since the right to attach order will not necessarily be limited to your property described in plaintiff's application, a writ of attachment may later be issued to attach other nonexempt property of yours.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
AT-115 [Rev. July 1, 2010]

**NOTICE OF APPLICATION AND HEARING FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT (Attachment)**

Code Civ. Proc., §§ 482.030, 484.010 et seq.;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov

| SHORT TITLE | CASE NUMBER: |
|---|---|
| 22 River House LLC, et al. v. McLaren Automotive, Inc., et al. | 25CV004887 |

6. d. If you claim that all or some portion of the property described in plaintiff's application is exempt from attachment, you must, no later than five court days prior to this hearing,

(1) ☑ include your claim of exemption in your notice of opposition filed and served pursuant to Code of Civil Procedure section 484.060 or file and serve a separate claim of exemption with respect to the property as provided in Code of Civil Procedure section 484.070.

(2) ☑ file with the court and serve on plaintiff a claim of exemption with respect to the property as provided in Code of Civil Procedure section 484.350.

If you fail to make a claim of exemption with respect to personal property, or make a claim of exemption with respect to real or personal property, but fail to prove that the property is exempt, any further claim of exemption with respect to the property will be barred unless you show a change in circumstances occurring after expiration of the time for claiming exemptions.

e. Claims of exemption resulting from a change of circumstances, whether after denial of a previous claim or expiration of the time for claiming exemptions, may be asserted as provided in Code of Civil Procedure section 482.100.

f. You may obtain a determination at the hearing whether property not described in the application is exempt from attachment. Your failure to claim that property not described in the application is exempt from attachment will not preclude you from making a claim of exemption with respect to the property at a later time.

g. You may also obtain a determination at the hearing whether the amount sought to be secured by the attachment will be reduced by

(1) the amount of any money judgment in your favor and against plaintiff that remains unsatisfied and enforceable;

(2) the amount of any indebtedness of the plaintiff that you have claimed in a cross-complaint filed in the action if your claim is one upon which an attachment could be issued;

(3) the amount of any claim asserted by you as a defense in the answer pursuant to Code of Civil Procedure section 431.70 if the claim is one upon which an attachment could have been issued had an action been brought on the claim when it was not barred by the statute of limitations; or

(4) the value of any security interest in your property held by plaintiff to secure the indebtedness claimed by plaintiff, together with the amount by which the value of the security interest has decreased due to the act of the plaintiff or a prior holder of the security interest.

h. The amount to be secured by an attachment is determined pursuant to the following statutes:

(1) **Code of Civil Procedure section 482.110**. A writ of attachment may include an estimate of the costs and allowable attorney fees.

(2) (a) ☑ **Code of Civil Procedure section 483.010**. An attachment may issue on a claim for $500 or more based on a contract, express or implied, exclusive of attorney fees, costs, and interests. If the claim was originally secured by an interest in real property (e.g., a mortgage or trust deed), an attachment may issue only if the security has become valueless or has decreased in value to less than the amount owing on the claim, through no fault of plaintiff or the security holder (if different from plaintiff).

(b) ☐ **Welfare and Institutions Code section 15657.01**. An attachment may issue on a claim based on the taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use, with intent to defraud, or by undue influence.

(3) **Code of Civil Procedure section 483.015.** The amount to be attached includes the amount of the indebtedness claimed by plaintiff, plus estimated costs and allowable attorney fees, reduced by the sum of the following:

(a) the amount of any unsatisfied money judgment held by defendant against plaintiff;

(b) the amount of any indebtedness of plaintiff claimed by defendant in a cross-complaint filed in the action (if a writ of attachment could issue on the claim);

(c) the amount of any cross-demand for money owed by plaintiff to defendant that is barred by the statute of limitations (but assertable as a Code of Civil Procedure section 431.70 defense) if the debt was one upon which a writ of attachment could have been issued before the statute of limitations ran; and

(d) the amount of any security interest held by plaintiff in defendant's property, together with any decrease in the value of the underlying security caused by plaintiff or a prior security holder.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| 22 River House LLC, et al. v. McLaren Automotive, Inc., et al. | 25CV004887 |

6 h. (4) **Code of Civil Procedure section 483.020.** An attachment ordered in an unlawful detainer proceeding may include
(a) the amount of rent past due when the complaint is filed;
(b) an additional amount for the estimated rent due from the date the complaint was filed until the estimated date of judgment or delivery of possession to plaintiff; plus
(c) estimated costs and attorney fees.

Any prepaid rent or lease deposits held by plaintiff are disregarded in the calculation of the amount of attachment. However, the amount of attachment will be reduced by the amounts described in Code of Civil Procedure section 483.015 (*see item 6h(3) above*).

i. Either you or your attorney or both of you may be present at the hearing.

j. YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH PLAINTIFF'S APPLICATION. THE ATTORNEY SHOULD BE CONSULTED PROMPTLY SO THAT THE ATTORNEY MAY ASSIST YOU BEFORE THE TIMES FOR FILING YOUR OPPOSITION AND CLAIMS OF EXEMPTION AND AT THE HEARING.

Date: October 8, 2025

Ronald J. Fisher
(TYPE OR PRINT NAME OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

▶ [signature]
(SIGNATURE OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

Docusign Envelope ID: E5E3B3B4-5D-C83-09340-VKD 38054560C Case 5:25-cv-09340-VKD Document 1-1 Filed 10/30/25 Page 43 of 63

AT-105

ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):
Ronald J. Fisher (SBN 298660); Ellen Leonida (SBN 184194)
One Embarcadero Center, 22nd Floor
San Francisco, CA 94131
TELEPHONE NO.: (415) 392-1960 FAX NO. (*Optional*): (415) 392-0827
E-MAIL ADDRESS (*Optional*): rfisher@sideman.com
ATTORNEY FOR (*Name*): 22 River House LLC, Remy Miralles, Fidji Simo

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: Monterey Courthouse

PLAINTIFF: 22 River House LLC, Remy Miralles, and Fidji Simo

DEFENDANT: McLaren Automotive Inc. and BMF Media Group LLC

**APPLICATION FOR**
☑ **RIGHT TO ATTACH ORDER** ☐ **TEMPORARY PROTECTIVE ORDER**
☑ **ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**
☐ **ORDER FOR ISSUANCE OF ADDITIONAL WRIT OF ATTACHMENT**
☑ **After Hearing** ☐ **Ex Parte**
☐ **Against Property of Nonresident**

CASE NUMBER: 25CV004887

1. Plaintiff (*name*): 22 River House LLC, Remy Miralles, and Fidji Simo
applies ☑ after hearing ☐ ex parte for
a. ☑ a right to attach order and writ of attachment.
b. ☐ an additional writ of attachment.
c. ☐ a temporary protective order.
d. ☐ an order directing the defendant to transfer to the levying officer possession of
(1) ☐ property in defendant's possession.
(2) ☐ documentary evidence in defendant's possession of title to property.
(3) ☐ documentary evidence in defendant's possession of debt owed to defendant.

2. Defendant (*name*): McLaren Automotive Inc.
a. ☐ is a natural person who
(1) ☐ resides in California.
(2) ☐ does not reside in California.
b. ☑ is a corporation
(1) ☑ qualified to do business in California.
(2) ☐ not qualified to do business in California.
c. ☐ is a California partnership or other unincorporated association.
d. ☐ is a foreign partnership that
(1) ☐ has filed a designation under Corporations Code section 15800.
(2) ☐ has not filed a designation under Corporations Code section 15800.
e. ☐ is other (*specify*):

3. Attachment is sought to secure recovery on a claim upon which attachment may issue under (*check one*):
☑ Code of Civil Procedure section 483.010 ☐ Welfare and Institutions Code section 15657.01.

4. Attachment is not sought for a purpose other than the recovery on a claim upon which the attachment is based.

5. Plaintiff has no information or belief that the claim is discharged or the prosecution of the action is stayed in a proceeding under title 11 of the United States Code (Bankruptcy).

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
AT-105 [Rev. July 1, 2010]

**APPLICATION FOR RIGHT TO ATTACH ORDER, TEMPORARY PROTECTIVE ORDER, ETC. (Attachment)**

Code of Civil Procedure, §§ 482.030, 484.010 et seq.;
Welfare & Institutions Code, § 15657.01
www.courtinfo.ca.gov

| SHORT TITLE | CASE NUMBER: |
|---|---|
| 22 River House LLC, et al. v. McLaren Automotive, Inc., et al. | 25CV004887 |

6. a. ☐ Plaintiff's claim or claims arise out of conduct by the defendant who is a natural person of a trade, business, or profession. The claim or claims are not based on the sale or lease of property, a license to use property, the furnishing of services, or the loan of money where any of the foregoing was used by the defendant primarily for personal, family, or household purposes.

   b. ☐ Plaintiff's claim or claims arise out of conduct of a natural person who or an entity that has taken, secreted, appropriated, obtained or retained, or assisted in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use, with intent to defraud, or by using undue influence.

7. The facts showing plaintiff is entitled to a judgment on the claim up on which the attachment is based are set forth with particularity in the
   a. ☑ verified complaint.
   b. ☐ attached affidavit or declaration.
   c. ☑ following facts *(specify)*:
   See accompanying Declaration of Remy Miralles; Declartion of Ronald J. Fisher; Memorandum of Points & Authorites in Support of Application for Right to Attach Order

8. The amount to be secured by the attachment is: $ 857,875
   a. ☑ which includes estimated costs of: $ 5,000
   b. ☑ which includes estimated allowable attorney fees of: $ 90,000

9. Plaintiff is informed and believes that the following property sought to be attached for which a method of levy is provided is subject to attachment:
   a. ☑ Any property of a defendant who is **not** a natural person.
   b. ☐ Any property of a nonresident defendant.
   c. ☐ Property of a defendant who is a natural person that is subject to attachment under Code of Civil Procedure section 487.010 *(specify)*:

   d. ☐ Property covered by a bulk sales notice with respect to a bulk transfer by defendant on the proceeds of the sale of such property *(describe)*:

   e. ☐ Plaintiff's pro rata share of proceeds from an escrow in which defendant's liquor license is sold *(specify license number)*:

10. Plaintiff is informed and believes that the property sought to be attached is not exempt from attachment.

11. ☐ The court issued a Right to Attach Order on *(date)*:
   *(Attach a copy.)*

12. ☐ Nonresident defendant has not filed a general appearance.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| 22 River House LLC, et al. v. McLaren Automotive, Inc., et al. | 25CV004887 |

13. a. Plaintiff ☐ alleges on ex parte application for order for writ of attachment
☐ is informed and believes on application for temporary protective order

that plaintiff will suffer great or irreparable injury if the order is not issued before the matter can be heard on notice because

(1) ☐ it may be inferred that there is a danger that the property sought to be attached will be
(a) ☐ concealed.
(b) ☐ substantially impaired in value.
(c) ☐ made unavailable to levy by other than concealment or impairment in value.

(2) ☐ defendant has failed to pay the debt underlying the requested attachment and is insolvent as defined in Code of Civil Procedure section 485.010(b)(2).

(3) ☐ a bulk sales notice was recorded and published pursuant to division 6 of the Commercial Code with respect to a bulk transfer by the defendant.

(4) ☐ an escrow has been opened under the provisions of Business and Professions Codesection 24074 with respect to the sale by the defendant.

(5) ☐ other circumstances *(specify)*:

b. The statements in item 13a are established by ☐ the attached affidavit or declaration
☐ the following facts *(specify)*:

14. ☐ Plaintiff requests the following relief by temporary protective order *(specify)*:

15. Plaintiff
a. ☐ has filed an undertaking in the amount of: $
b. ☑ has not filed an undertaking.

Date: October 8, 2025

Ronald J. Fisher
(TYPE OR PRINT NAME OF PLAINTIFF OR PLAINTIFF's ATTORNEY)

▶ [signature]
(SIGNATURE OF PLAINTIFF OR PLAINTIFF'S ATTORNEY)

**DECLARATION**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 25, 2025

Remy Miralles
(TYPE OR PRINT NAME)

▶ Remy Miralles
(SIGNATURE OF DECLARANT)

16. Number of pages attached: 0

RONALD J. FISHER (State Bar No. 298660)
E-Mail: *rfisher@sideman.com*
ELLEN V. LEONIDA (State Bar No. 184194)
E-Mail: *eleonida@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for 22 River House LLC, Remy Miralles, and Fidji Simo

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF MONTEREY**

22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO,

Plaintiffs,

v.

MCLAREN AUTOMOTIVE INC., a Delaware Corporation; BMF MEDIA GROUP, a Delaware limited liability company; and DOES 1-10,

Defendants.

Case No. 25-CV-004887

**MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**

Filed concurrently with Notice of Application and Hearing for Right to Attach Order and Writ of Attachment; Verified Application for Right to Attach Order; Declaration of Rémy Miralles; Declaration of Ronald J. Fisher, Esq,

Judge: Hon. Thomas W. Wills
Date: November 7, 2025
Time: 8:30am
Dept.: 15

Case No. 25-CV-004887.
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 1
III. ARGUMENT ..... 3
A. Legal Standard ..... 3
B. Plaintiffs' Claim Is One Upon Which An Attachment May Be Issued ..... 3
1. Plaintiffs' Claim Is For Money Due Under a Contract For a Fixed or Readily Ascertainable Amount ..... 3
2. Plaintiffs' Claim Is Unsecured ..... 4
3. Plaintiffs' Claim Is a Commercial Claim ..... 5
C. Plaintiffs' Claim Has Probable Validity ..... 5
1. Plaintiffs Have Established the Elements of Breach of the Contract ..... 5
D. Plaintiffs Seek Attachment for a Proper Purpose ..... 6
E. The Amount of the Attachment Should Be $857,875 ..... 6
IV. CONCLUSION ..... 7

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bringas v. Sullivan*,
126 Cal. App. 2d 693 (1954) ... 4

*D'Arrigo Bros. of California v. United Farmworkers of Am.*,
224 Cal. App. 4th 790 (2014) ... 5

*Kemp Bros. Const., Inc. v. Titan Elec. Corp.*
(2007) 146 Cal.App.4th 1474 ... 5

*Pech v. Morgan*,
61 Cal.App.5th 841 (2021), *review denied* (June 16, 2021) ... 5

**Statutes**

Civ. Proc. Code § 483.010 ... 3

Code Civ. Proc., §481.190 ... 5

Code of Civil Procedure Section 482.110.2 ... 6

Code of Civil Procedure Section 483.015 ... 6

Code of Civil Procedure section 484.090 ... 3, 6

**Other Authorities**

2 Weil & Brown, *California Practice Guide, Civ. Proc. Before Trial* (TRG 2013) § 9:858 ... 3

3 Weil & Brown, *California Practice Guide, Civ. Proc. Before Trial* ... 5

A. Ahart, California Practice Guide: Enforcing Judgments and Debts, § 4.73 ... 6

ii

Case No. 25-CV-004887

MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## I. INTRODUCTION

This is an action for damages brought by Plaintiffs 22 River House LLC ("River House"), Rémy Miralles, and Fidji Simo with respect to Defendant McLaren Automotive, Inc.'s ("McLaren) breach of a written commercial event license agreement (the "Contract"). McLaren licensed Plaintiff's Carmel property from Plaintiffs for an event during Monterey Car Week (the "Event") and agreed it would obtain "any and all permits necessary to conduct the Event."

But McLaren did not obtain *any* permits for the Event, and the County of Monterey accordingly assessed a $762,875 administrative fine against Plaintiffs for McLaren's failure, which Plaintiffs have paid (as they must).

Plaintiffs have therefore filed a verified complaint against McLaren seeking to be held harmless pursuant to the Contract's expansive indemnity provision, and hereby apply for a writ of attachment against Defendant McLaren to secure its damages claim while this action is pending for the sum of $857,875. This sum includes: (1) the $762,875 administrative fine assessed by the County of Monterey; and (2) $90,000 in estimated attorney's fees and $5,000 in estimated costs.

## II. FACTUAL BACKGROUND

Plaintiffs Miralles and Simo own a residential property in Carmel Valley (the "Property") through their wholly owned LLC, Plaintiff River House. (Verified Compl. ¶ 1.) Plaintiffs Miralles and Simo are the sole owners and members of Plaintiff River House. (*Id.* ¶ 23.)

On July 31, 2025, Defendant McLaren—an internationally renowned supercar brand with an associated world-champion Formula One team—signed a "Location Agreement and Event License" (hereafter, the "Contract") with Plaintiff River House to license the use of the Property. (*Id.* ¶ 2 & Ex. A [Contract].) McLaren licensed use of the Property so that its promotional media agent, Defendant BMF Media, could host a weeklong McLaren promotional event (the "Event") during Monterey's world-famous Car Week. (*Id.*) In specific, the Event took place from August 11, 2025 to August 18, 2025. (*Id.* ¶ 7.)

McLaren agreed to a comprehensive indemnity clause in the Contract. In specific, McLaren agreed to:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

> indemnify, defend and hold Licensor (*i.e.*, River House), all officers, directors, managers, members[1], shareholders, agents and representatives free and harmless from and against any and all liabilities, liens, fines, penalties, damages, losses, costs, expenses and third party claims for damage or injury, including without limitation, any attorneys' fees or other costs incurred by Licensor, in connection therewith, arising out of, related to, or resulting from, Licensee's breach of this Agreement or Licensee's negligence or willful misconduct when using the Premises.

(*Id.* Ex. A [Contract] ¶ 8.)

McLaren also agreed in the Contract that it was "***responsible for obtaining any and all permits necessary to conduct the Event.***" (*Id.* Ex. A [Contract] ¶ 9 [emphasis added].) But McLaren and its agent Defendant BMF Media Group LLC ("BMF Media") did not obtain ***any*** permits from the County of Monterey for the Event. (*Id.* ¶ 6.)

On August 13, 2025 (during the middle of the Event) the County of Monterey hand-delivered a citation dated August 12, 2025 to Defendant McLaren's agent, Defendant BMF Media (hereafter, the "August 12 Citation"). The August 12 Citation (which was addressed to Plaintiff Miralles and Simo) found that required permits had not been obtained for the Event and assessed an administrative fine of $505,359.00 against Plaintiffs. (*Id.* ¶¶ 7-9 & Ex. B [August 12, 2025 Citation]; *see also* Ex. C (September 12, 2025 citation stating that County hand-delivered the August 12 Citation to Defendant McLaren's agent, Defendant BMF Media.) Neither McLaren nor BMF Media disclosed that they had received the August 12 Citation. (*Id.* ¶¶ 10-15.)

On September 12, 2025, the County of Monterey issued a revised administrative citation that increased the administrative fine to $761,975, plus $900 in alleged administrative costs (hereafter, the "September 12 Revised Citation"). (*Id.* ¶ 16 & Ex. C.) On September 16, 2025, Plaintiff River House paid $762,875 to the County of Monterey as required by the September 12, 2025 Revised Citation. (*Id.* ¶ 17; Miralles Decl. Ex. 1.)

[1] Plaintiffs Miralles and Simo are members of 22 River House LLC, and so are encompassed within McLaren's indemnification.

2 Case No. 25-CV-004887
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## III. ARGUMENT

### A. Legal Standard

Code of Civil Procedure section 484.090 provides that a court *shall* issue a right to attach order against a defendant if it finds that:

1. The claim upon which the attachment is based is one upon which an attachment may be issued.
2. The plaintiff has established the probable validity of the claim upon which the attachment is based.
3. The attachment is not sought for a purpose other than recovery of the claim upon which the application is based.
4. The amount to be secured by the attachment is greater than zero.

Code Civ. Proc., § 484.090(a).

If the Court makes the above findings, and if "[Defendant] fail[s] to prove that all of the property sought to be attached is exempt from attachment, [the Court] *shall* order a writ of attachment to be issued upon the filing of an undertaking." Code Civ. Proc. § 484.090(b) (emphasis added).

Plaintiffs' Application for a Right to Attach Order and Order For Issuance of Writ of Attachment (the "Application") and the supporting Miralles Declaration and Fisher Declaration demonstrate that each of these basic requirements is met in this case.

### B. Plaintiffs' Claim Is One Upon Which An Attachment May Be Issued

An attachment may issue on a claim if: (a) it is a claim for money based upon a contract where the total amount of the claim is a fixed, readily ascertainable amount not less than $500.00; (b) the creditor's claim is fully or partially unsecured; and (c) the claim arises from a commercial transaction. (Civ. Proc. Code § 483.010; 2 Weil & Brown, *California Practice Guide, Civ. Proc. Before Trial* (TRG 2013) § 9:858, p.9(II)-71.) In this case, each of these requirements is met.

#### 1. Plaintiffs' Claim Is For Money Due Under a Contract For a Fixed or Readily Ascertainable Amount

Code of Civil Procedure section 483.010(a) provides that an attachment may issue in an

3 Case No. 25-CV-004887
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

action on a claim for money based upon a contract, where the amount of the claim is not less than five hundred dollars ($500.00), exclusive of costs, interest, and attorneys' fees.

Plaintiffs' verified complaint is based upon Defendant's breach of Section 9 of the Contract (wherein McLaren agreed that it was "***responsible for obtaining any and all permits necessary to conduct the Event***") and Section 8 of the Contract (wherein McLaren agreed to indemnify and hold Plaintiffs harmless for "***any and all liabilities***, liens, ***fines***, penalties, damages, losses, costs, expenses and third party claims for damage or injury, ***including without limitation, any attorneys' fees or other costs incurred by Licensor***, in connection therewith, arising out of, related to, or resulting from, Licensee's breach of this Agreement." (Verified Compl. Ex. A [Contract] ¶¶ 8-9.) Accordingly, the statutory "contract" element is satisfied.

Furthermore, a claim is for "a readily ascertainable amount" where it is measurable by reference to the contract and the basis for computing damages is reasonable and certain. *See, e.g.*, *Bringas v. Sullivan*, 126 Cal. App. 2d 693, 699 (1954) ("the contract sued on must furnish a standard by which the amount due may be clearly ascertained, and there must exist a basis upon which the damages can be determined by proof.") Here, Section 8 of the Contract clearly identifies "fines" and attorneys' fees and costs as a category of damages subject to indemnity. (Verified Compl. Ex. A [Contract] ¶ 8.)

The September 12 Revised Citation (Ex. C to the Verified Complaint) definitively establishes the amount of the fine that Plaintiffs were required to pay with certainty as $762,875. This is a readily ascertainable amount that exceeds $500. Thus, the claim upon which this action is based is unquestionably one upon for which an attachment order may issue. *Bringas*, 126 Cal. App. 2d at 702 (holding that a writ of attachment must issue where "the contract sued on furnishes a standard by which the amount due may be clearly ascertained; that there exists a basis on which the damages can be determined by proof; and that it appears by reference to the contract, the complaint, and the affidavit that the computation of damages alleged is reasonable, definite, and readily ascertainable."

**2. Plaintiffs' Claim Is Unsecured**

Plaintiffs' claim in this action is unsecured. (Miralles Decl. ¶ 3.) The security deposit of

$50,000 set forth in Section 4 and 5 of the Contract has been applied to attorneys' fees and costs incurred in dealing with the County of Monterey (but not the administrative fine) as permitted by Section 4 of the Contract (permitting Plaintiff River House to apply the deposit "against any . . . penalties for non-adherence of this License, or other liabilities incurred as a result of [McLaren]'s use of the [Property]." The right to attach order Plaintiffs is seeking through this Application is exclusive of these costs.[2]

**3. Plaintiffs' Claim Is a Commercial Claim**

Plaintiffs' relevant breach of contract claim is against Defendant McLaren Automotive, Inc., a Delaware corporation. Furthermore, Plaintiffs' claim arises out of a contract to license the Property for a commercial marketing event. (Verified Compl. Ex. A [Contract].) Accordingly, Plaintiff's claim against Defendant is a commercial claim that satisfies the requirements for an attachment. *See* 3 Weil & Brown, *California Practice Guide, Civ. Proc. Before Trial, supra,* § 9:868 at p9(II)-74 ("Commercial claims: attachment lies on any claim against a partnership").

**C. Plaintiffs' Claim Has Probable Validity**

"A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against defendant on that claim." Code Civ. Proc., §481.190 (definition of probable validity); *see Kemp Bros. Const., Inc. v. Titan Elec. Corp.* (2007) 146 Cal.App.4th 1474, 1476). The plaintiff must merely "establish a prima facie case," which the defendant bears the burden of overcoming. *Pech v. Morgan*, 61 Cal.App.5th 841, 854–55 (2021), *review denied* (June 16, 2021).

**1. Plaintiffs Have Established the Elements of Breach of the Contract**

To establish the elements of its breach of contract claim, Plaintiffs must show "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014).

[2] Plaintiffs reserve the right to seek a further writ of attachment in the future to secure such costs, as the Code of Civil Procedure expressly permits them to do.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Here, Plaintiffs have established the elements of their breach of contract claim by demonstrating that: (1) McLaren entered into a written commercial Contract (specifically entitled "Location Agreement & Event License") for the Event, in which McLaren agreed that it was "responsible for obtaining any and all permits necessary to conduct the Event," (Verified Compl. Ex. A [Contract] ¶ 9 [emphasis added]), and in which McLaren agreed to indemnify Plaintiffs against "any and all . . fines" arising out of a breach by McLaren; (2) Plaintiffs performed their obligations under the Contract by granting access to the Property; (3) McLaren breached the Contract by failing to obtain the permits necessary for the Event (Verified Compl. Ex. C [September 12 Revised Citation]); and (4) Plaintiffs have suffered significant monetary damages resulting from McLaren's breach in an amount exceeding $762,875. (*Id.*) Accordingly, Plaintiff has demonstrated the probable validity of its claims and will more likely than not obtain a judgment against Defendant in this case.

**D. Plaintiffs Seek Attachment for a Proper Purpose**

As set forth in the verified application, and the supporting Miralles Declaration, this attachment is sought for no purpose other than recovery of Plaintiff's claim for moneys due under the Contract – the same funds sought via Plaintiffs' verified complaint. (Miralles Decl. ¶ X.) Plaintiffs have therefore met all of the requirements of Code of Civil Procedure section 484.090(a)(3) that "[t]he attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based", and Plaintiffs are entitled to a Right to Attach Order and Order For Issuance of Writ of Attachment against Defendant McLaren.

**E. The Amount of the Attachment Should Be $857,875**

Pursuant to Code of Civil Procedure Section 483.015, the amount to be secured by attachment is the sum of the following:

(1) the amount of the defendant's indebtedness claimed by the plaintiff; and

(2) any additional amount included by the court under section 482.110.2.[3]

[3] CCP § 482.110(a) provides that "[t]he plaintiff's application for a right to attach order and a writ of attachment pursuant to this title may include an estimate of the costs and allowable attorney's fees."

*See* Code Civ. Proc. § 483.015(a); *see* A. Ahart, California Practice Guide: Enforcing Judgments and Debts, § 4.73, at p. 4-19-20.

Here, the amount to be secured by attachment should be $857,875, which is the sum of the following:

(1) $762,875, the amount paid to the County of Monterey pursuant to the September 12 Revised Citation; and

(2) $95,000 in Plaintiff's estimated attorneys' fees and estimated costs.[4] (Fisher Decl. at ¶¶ 5-6.)

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that their Application be granted in the sum of $857,875.

DATED: October 8, 2025

SIDEMAN & BANCROFT LLP

By: ______________________

Ronald J. Fisher
Attorneys for 22 River House LLC, Remy Miralles, and Fidji Simo

[4] Attorneys' fees and costs are sought pursuant to Section 8 of the Contract regarding indemnification, which provides that McLaren would indemnify "any attorneys' fees or other costs incurred by [Plaintiffs]." (Verified Compl. Ex. A [Contract] ¶ 8.)

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

7 Case No. 25-CV-004887
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

RONALD J. FISHER (State Bar No. 298660)
E-Mail: *rfisher@sideman.com*
ELLEN V. LEONIDA (State Bar No. 184194)
E-Mail: *eleonida@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for 22 River House LLC, Remy Miralles, and Fidji Simo

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF MONTEREY**

| | |
|---|---|
| 22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO,<br><br>Plaintiffs,<br><br>v.<br><br>MCLAREN AUTOMOTIVE INC., a Delaware Corporation; BMF MEDIA GROUP, a Delaware limited liability company; and DOES 1-10,<br><br>Defendants. | Case No. 25-CV-004887<br><br>**DECLARATION OF REMY MIRALLES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**<br><br>Filed concurrently with Plaintiff's Application for Right to Attach Order and Order for Issuance of Writ of Attachment; Notice of Application and Hearing for Right to Attach Order and Writ of Attachment; Verified Application for Right to Attach Order; Declaration of Ronald J. Fisher, Esq.<br><br>Judge: Hon. Thomas W. Wills<br>Date: November 7, 2025<br>Time: 8:30am<br>Dept.: 15 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1. I am a member of Plaintiff 22 River House LLC and a plaintiff in my own right in this action. I make this Declaration in support of Plaintiffs' Application for Right to Attach Order and Order for Issuance of Writ of Attachment. I have personal knowledge of the facts set forth in this Declaration and if called as a witness could and would testify as follows:

2. Attached hereto as **Exhibit 1** is a true and correct copy of bank records showing the payment of the $762,875 administrative fine in the September 12 Revised Citation.

3. The security deposit described in Exhibit 1 has been applied to attorneys' fees and costs incurred in dealing with the County of Monterey as well as repairs and clean up after the Event.

4. Plaintiffs are bringing this Application solely for the purposes of recovering the administrative fine in the September 12 Revised Citation, and the related attorneys' fees and costs Plaintiffs are and will incur, as permitted by the Contract.

I certify the foregoing under penalty of perjury.

DATED: September 26, 2025

By: Remy Miralles

Remy Miralles

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# EXHIBIT 1





PO Box 28019
Albuquerque, NM 87125-8019

BBPMCHJNQXXGP

22 RIVER HOUSE LLC
3701 SACRAMENTO STREET #312
SAN FRANCISCO    CA 94118-1705

**Your Authorized agent/Advisor:**
JORDAN PARK GROUP LLC
100 PINE ST
STE 2600
SAN FRANCISCO CA 94111
PHONE: 415-417-3000

September 16, 2025

Dear Account Owner(s),

**Why Are You Receiving This Letter?**

You are receiving this letter to confirm a transaction(s) on account XXX-XX8022. Please see details of the transaction(s) on the following page.

**What Should You Do?**

Please take a few minutes to review this information carefully. **If this information is accurate, you do not need to do anything.**

- If any information is inaccurate or you have questions about this transaction(s), please contact your Authorized agent/Advisor at 415-417-3000.

- If you did not authorize this transaction(s), please call Fidelity *immediately* at 800-544-6666.

Thank you for being a valued customer.

Sincerely,

Fidelity Brokerage Services LLC

Fidelity Brokerage Services LLC
PO Box 770002
Cincinnati, OH 45277-0074
1-800-544-6666

Your Authorized agent/Advisor is not affiliated with Fidelity Investments.
Fidelity Investments & Pyramid Design logo is a registered service mark of FMR, LLC.
Clearing, custody, or other brokerage services may be provided by National Financial Services LLC, or Fidelity Brokerage Services LLC, Members NYSE, SIPC.

Account Number: XXX-XX8022

## Check Disbursement(s)

Check(s) were disbursed to the payee(s) at the address(es) below.

CHECK DISBURSEMENT

| | |
|---|---|
| Date of Transaction: | September 16, 2025 |
| Transaction Reference Number: | 23840822 |
| Check Amount: | $761,975.00 |
| Payee Name and Address: | County of Monterey<br>1441 SCHILLING PL FL 2ND<br>SALINAS CA 93901-4543 |

CHECK DISBURSEMENT

| | |
|---|---|
| Date of Transaction: | September 16, 2025 |
| Transaction Reference Number: | 23840916 |
| Check Amount: | $900.00 |
| Payee Name and Address: | County of Monterey<br>1441 SCHILLING PL FL 2ND<br>SALINAS CA 93901-4543 |

RONALD J. FISHER (State Bar No. 298660)
E-Mail: *rfisher@sideman.com*
ELLEN V. LEONIDA (State Bar No. 184194)
E-Mail: *eleonida@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for 22 River House LLC, Remy Miralles, and Fidji Simo

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF MONTEREY**

22 RIVER HOUSE LLC, REMY MIRALLES, and FIDJI SIMO,

Plaintiffs,

v.

MCLAREN AUTOMOTIVE INC., a Delaware Corporation; BMF MEDIA GROUP, a Delaware limited liability company; and DOES 1-10,

Defendants.

Case No. 25-CV-004887

**DECLARATION OF RONALD J. FISHER, ESQ. IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT**

Filed concurrently with Plaintiff's Application for Right to Attach Order and Order for Issuance of Writ of Attachment; Notice of Application and Hearing for Right to Attach Order and Writ of Attachment; Verified Application for Right to Attach Order; Declaration of Remy Miralles

Judge: Hon. Thomas W. Wills
Date: November 7, 2025
Time: 8:30am
Dept.: 15

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 Case No. 25-CV-004887.
DECLARATION OF RONALD J. FISHER, ESQ. IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1. I am an attorney duly admitted to practice in all of the courts of the State of California and am a partner of Sideman & Bancroft LLP, attorneys of record for Plaintiffs 22 River House LLC, Remy Miralles, and Fidji Simo. The following is of my own personal knowledge, and if called as a witness in this matter, I could and would competently testify thereto.

2. Sideman & Bancroft LLP ("Sideman") is a boutique law firm headquartered in San Francisco, California, that represents a wide range of clients ranging from privately held businesses and their founders and investors, high-net worth individuals, and Fortune 100 companies. Sideman's clients include companies such as Accenture, Google, HP, Cisco Systems, Golden State Cider, YETI Coolers, lululemon, Yelp, General Mills, Shopify, Fitbit, Samsung, and Intel. Sideman's litigators routinely handle high profile and complex litigation involving antitrust, unfair competition, breach of contract, and other commercial matters.

3. I am a partner at Sideman. I graduated from the University of Virginia School of Law in 2014, where I was elected to the Order of the Coif. I also served on the managing board of, and was published in, the *Virginia Law Review*. After law school, I clerked for the Honorable Michelle T. Friedland of the United States Court of Appeals for the Ninth Circuit, then practiced as an associate in Latham & Watkin LLP's antitrust and complex commercial litigation practices. I have experience trying cases in federal court (including a six-week antitrust jury trial in which our client won a $55 million judgment), state court, and private arbitration. I have won over $90 million in judgments for clients, and have also obtained jury verdicts rejecting claims for millions of dollars asserted against my clients. I have argued appeals before the Ninth Circuit, and have worked on successful merits cases before the Supreme Court of the United States. From 2020 to 2024, I was designated as a Rising Star in Northern California by SuperLawyers, a designation that is given to no more than 2.5% of attorneys who demonstrate outstanding career accomplishments before the age of 40.

4. My standard billing rate is $945 per hour, which is the rate that Plaintiffs are actually paying for my services in this action. My rates at a prior firm have been approved in multiple fee application orders issued by the Northern District of California, including *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, Dkt. No. 629, 2020 WL

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

2 Case No. 25-CV-004887.
DECLARATION OF RONALD J. FISHER, ESQ. IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT

1667435, at *14 (N.D. Cal. Apr. 3, 2020), and *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, Dkt. No. 657, 2020 WL 1667435, at *14 (N.D. Cal. May 11, 2020).

5. Based on my experience, the amount in controversy in this action, and my review of the issues presented, as well as the sophistication of opposing counsel, I conservatively estimate that Plaintiff's attorneys' fees in this action will be at least $90,000.00. This estimate includes attorneys' fees that have been and/or will be expended in connection with this attachment application, in addition to the cost of propounding and responding to written discovery requests, participating in depositions of representatives of both parties, handling case management, and trial preparation and trial.

6. In addition to the attorney fees, I conservatively estimate that recoverable court costs, including filing fees, deposition transcript costs and attachment bond premiums, will be at least $5,000.00. These estimates do not include fees for any potential expert witness discovery or significant motion practice, such as presenting or opposing a motion for summary judgment or adjudication or any motions to compel discovery, if necessary.

I certify under penalty of perjury that the foregoing is true and correct.

DATED: October 8, 2025

SIDEMAN & BANCROFT LLP

By: ______________________

Ronald J. Fisher
Attorney for 22 River House LLC, Remy Miralles, and Fidji Simo

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

3 Case No. 25-CV-004887.
DECLARATION OF RONALD J. FISHER, ESQ. IN SUPPORT OF PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT